THE HONORABLE STANLEY A. BASTIAN

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN E. OROZCO,<br><br><br>Plaintiff,<br><br>vs.<br><br>YAKIMA SHERIFF'S OFFICE, YAKIMA COUNTY, and SERGIO REYNA and JANE DOE REYNA, JOHN DUGGAN and JANE-DOE DUGGAN, and J. TOWELL and JANE DOE TOWELL,<br><br>Defendants. | NO.  1:22-cv-03058-SAB<br><br>PLAINTIFF'S RESPONSE TO DEFEND-ANTS' MOTION FOR SUMMARY JUDG-MENT<br>**(ORAL ARGUMENT REQUESTED)** |

## <u>RELIEF REQUESTED</u>

Plaintiffs respectfully request this court to deny Defendants' Motion for Summary Judg-ment.  There are material facts in dispute that prevent summary judgment, and these disputed materials facts must and should be decided by the jury.  Some of the material disputed facts in this case, include but are not limited to, whether Defendants had probable cause to arrest Mr. Orozco when Superior County Yakima Judge Federspiel ruled and held that the Defendants did not have probable cause to arrest Mr. Orozco; and whether Defendants violated Mr. Orozco's constitutional rights when it failed to have probable cause to arrest him.

1     _Plaintiff's Objection to Exhibit 6 submitted by the Defendants_

2          Plaintiff objects to the Exhibit 6 submitted by the Defendants' Washington State Auditor

3     Report.  The Plaintiff objects on the basis that the report is hearsay, unauthenticated and lacks

4     personal knowledge of the claimed theft of $100.00 – the reason Mr. Orozco was arrested.  ER

5     602, 801-802.

6                                **BACKGROUND FACTS**

7     _Court Found No Probable Cause_

8          On August 14, 2019, Superior Judge Doug Federspiel ruled that the Affidavit/Declaration

9     submitted by then Sgt. Jerrold Towell, failed to establish probable cause, and ordered Mr. Oroz-

10    co to be released without any restrictions or conditions.  _Valdez Dec._, Ex. 1.

11         On that same day, Judge Federspiel stated that the Affidavit/Declaration of Jerry Towell

12    failed to find probable cause to arrest Mr. Orozco.  _Valdez Dec._, Ex 2 and 3.  The factual allega-

13    tions in the Affidavit/Declaration of Jerry Towell was not based on personal knowledge; the Af-

14    fidavit/Declaration was not made on any independent facts; and there were nothing known about

15    the source.  _Valdez Dec._, Ex. 3, page 3, lines 8-12, page 4-5, lines 20-3.  The court stated that

16    "many of the statements in here [Affidavit/Declaration of Jerry Towell] are conclusionary state-

17    ments."  _Id._ Ex. 3, page 5, lines 16-20.

18    _Events Leading Up to the Arrest_

19         On August 12, 2019, Mr. Orozco who was at that time the past Mayor of Wapato, was ar-

20    rested by Defendants for the alleged theft of one hundred dollars ($100.00 (USD)) while in the

21    midst of moving.   Mr. Orozco was arrested for the allegation of Misappropriation and Falsifica-

22    tion of Accounts by a public officer and official misconduct pursuant to RCW 9A.80.01.  _Valdez_

23    _Dec._, Ex 2. The alleged theft occurred nearly 1 year prior to being arrested - October 4, 2018.  _Id._

24    Defendants did not interview Plaintiff or the then current Mayor of Wapato, Dora Alvarez-Roa,

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 2

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

1   prior to arresting Mr. Orozco.  Defendants failed to interview witnesses that contradicted the De-

2   fendants version of events, including then Mayor of Wapato Dora Alvarez-Roa.  *See Declara-*

3   *tion of John Orozco.*

4          Jerry Towell stated the following in his deposition:

5   Q.    Okay.  Now, in 2019, did you go to speak with anybody at the city of Wapato to confirm

6   this theft of $100?

7   A.     I don't recall.

8   Q.    Okay. You don't recall if you spoke with the mayor of Wapato weeks prior to this arrest?

9   A.     I don't believe I went to the city to speak with the mayor—if I spoke with the mayor.

10  Q.    All right.  Did you speak with the mayor prior to arresting Mr. Orozco?

11  A.     I don't --- I don't recall.

12         *Valdez Dec.,* Ex. 4 Deposition of Jerry Towell, pages 75-76, lines 21-21.

13         Defendant Towell further stated it didn't matter what Ms.  Dora Alvarez-Roa would have

14  said because he wouldn't change his position.

15  Q.    Okay.  Now, if the mayor did reach out to you – of Wapato and said this did not occur

16  would that have changed your position?

17  A.     No.

18  Q.    Excuse me.  I didn't hear you.

19  A.     No.

20  Q.    All right.  So if there was more than a few individuals from the city of Wapato that said,

21  hey, this did not occur, that wouldn't change your position?

22  A.     No.

23  Q.    Okay.  What would it have took to change your position?

24  A.     If the crime hadn't been committed.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 3

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

1   *Valdez Dec*., Ex. 4 Deposition of Jerry Towell, pages 76-77, lines 16-16.

2       Mr. Orozco was startled, confused and bewildered at what was occurring. *See Declara-*

3   *tion of John Orozco*. Mr. Orozco could not believe he was being handcuffed and arrested by the

4   Defendants. *Id.* Mr. Orozco was anxious and worried as he did not know why he was being ar-

5   rested. *Id.*

6       On that same day, Defendants Sheriffs handcuffed, detained, and arrested Mr. Orozco.

7   *Id.* Mr. Orozco was never given a reason why he was arrested.

8       Defendants wrongfully concluded that they had probable cause to arrest Mr. Orozco.

9       Based on false representations given to the Defendants and failing to make any independ-

10  ent investigation aside from speaking with Cindy Goodin and without any further investiga-

11  tion/verification from other individuals at the City of Wapato.

12      Prior to arresting Mr. Orozco, Sgt. Jerry Towell then consulted and obtained authoriza-

13  tion on behalf of the Defendants from Yakima County Prosecuting Attorney, Joseph Brusic, Ya-

14  kima County Sheriff, Robert Udell, and Yakima County Criminal Chief Deputy, Carl Hendrick-

15  son and jointly and together as one group - as this was the moving force behind the decision -

16  they decided there was sufficient information and evidence to establish probable cause to arrest

17  and ordered Mr. Orozco to be arrested. *Valdez Dec*., Ex. 4, Deposition of Jerry Towell, pages

18  67-69, lines 10-5; See also Defendants Statement of Material Facts Not in Dispute, Dkt. 22, page

19  5, para. 28-30.

20      Moreover, Sgt. Towell testified to the following at this deposition:

21  Q.   All right. And then – is there like a conversation between all four of you with Reyna and

22  Duggan or is that – did you say, I'll call you back later about the arrest? Help me understand

23  that.

24  A.   The latter.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 4

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

Q.      The latter being we're going to—

A.      The latter – the latter, I discussed it with my supervisors and Joseph Brusic, [County] prosecutor.  Then the decision was made for them to make the arrest.

Q.      And then did you call Deputy Duggan or Reyna and say arrest Orozco?

A.      Yes.

    *Id*. at pages 68-69, lines 20-6.

    All of these individuals ratified the actions of Jerry Towell and the other detectives to arrest Mr. Orozco based on this lack of information and evidence.  *Id.*

    Jerry Towell further testified that in his 32 years of being with the Yakima Sheriff's Office, this was the only case he has ever submitted with that particular offense being attached to it. *Id*. at page 32, lines 10-19.

    Contrary to the Defendants' claim of concealment there are no written reports from neighbors of Mr. Orozco concealing a U-haul vehicle as claimed by the Defendants, and the Affidavit/Declaration of Jerry Towell makes no mention and fails to state anything about a U-haul vehicle being concealed.  *Valdez Dec.*, Ex. 2.  The testimony of Det. John Duggan contradicts and denies any claim of concealment of a U-haul.  *Valdez Dec.*, Ex. 5, Deposition of John Duggan.

    Det. Duggan stated the following in his deposition:

Q. So did you see – Do you recall seeing a U-haul?

A. I do.

Q. All right.  And what do you recall seeing?

A.      Just like a large U-haul in the driveway.

 *Valdez Dec.*, Ex. 5 page, 42, lines 8-11.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 5

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

1    There is no evidence to support this statement of Jerry Towell of a U-haul being con-

2    cealed; there is only the self-serving testimony of Jerry Towell on behalf of the Defendants.

3    Mr. Orozco testified that he sought help to deal with the pressure and anxiety he felt from

4    this incident.  *Valdez Dec*., Ex 6, page 83-85, lines 18-7.  Mr. Orozco testified he was embar-

5    rassed, and suffered anxiety as this incident received a "horrible amount of press that covered

6    that." *Valdez Dec*., Ex. 6 page 84, lines 19-25.   Mr. Orozco further stated that the incident was

7    broadcast via newspaper and television in regional and local areas, which caused Mr. Orozco to

8    suffer emotional, financial and mental stress.  *See Declaration of John Orozco.*  Mr. Orozco

9    couldn't sleep for years after the incident and is fearful of law enforcement because of this inci-

10   dent.  *Id.*

11

12                          **ISSUES PRESENTED**

13   1.    Whether Defendants had probable cause to arrest Mr. Orozco;

14   2.    Whether Defendants violated Mr. Orozco's constitutional rights;

15   3.    Whether Defendants actions in this case were negligent; and

16   4.    Whether Mr. Orozco has valid State claims.

17

18                      **LEGAL AUTHORITY AND ANALYSIS**

19    "Summary judgment is appropriate only 'if the pleadings, the discovery and disclosure

20   materials on file, and any affidavits show that there is no genuine issue as to any material fact

21   and that the movant is entitled to judgment as a matter of law.' " *Stoot v. City of Everett* , 582

22   F.3d 910, 918 (9th Cir. 2009) (quoting Fed. R. Civ. P. 56(c) ).   Summary judgment is proper if

23   the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show

24   that there is no genuine issue of material fact and that the moving party is entitled to judgment as

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 6

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

a matter of law. Fed. R. Civ. P. 56(c).   The movant bears the initial burden to demonstrate that absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255; see also *Galvin v. Hay*, 374 F.3d 739, 745 (9th Cir. 2004) (We draw all reasonable inferences in favor of the non-moving party.)

In determining whether the factfinder could reasonably find in the nonmoving party's favor, "the court must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); see also *Galvin v. Hay*, 374 F.3d 739, 745 (9th Cir. 2004). (In reviewing a summary judgment ruling, we draw all reasonable inferences in favor of the non-moving party.  Both questions of fact as well as questions of witness credibility fall within the "exclusive province of the [jury] …" *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (*quoting U.S. v. Archdale*, 229 F.3d 861, 867 (9th Cir. 2000)

The Court is obligated to construe the record in the light most favorable to the party opposing the summary judgment. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A summary judgment is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded as not a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp,* at 327.  The determination of the existence of fact is a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g. a preponderance of the evidence in most civil

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 7

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

1   cases. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 245, 253 (1986); and *T.W. Elec. Ser-*

2   *vice Inc., v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630 (9th Cir. 1987).

3       Evidence is to be viewed "in the light most favorable to the non-moving party, and all justifi-

4   able inferences are to be drawn in its favor." *Slumier v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir.

5   2010)(*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

6       In the *S.E.C. v. Phan*, 500 F.3d 895 (9th Cir. 2007), the 9th Circuit Court of Appeals re-

7   versed the district court because the district court ruled in favor of summary judgment for the

8   SEC when the district court wrongly decided to disregard the declarations of the Defendants, and

9   stated the district court was wrong when it ruled the Defendants declarations were 'uncorroborat-

10  ed and self-serving.'..." *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007).

11      The Ninth Circuit Court of Appeals held: "declarations oftentimes will be "self-serving"

12  — "[a]nd properly so, because otherwise there would be no point in [a party] submitting [them]."

13  *citing United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999).   The Ninth Circuit Court

14  of Appeals went on to state: "In most cases, consequently, "[t]hat an affidavit is self-serving

15  bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of

16  material fact." *Id*.  Only in certain instances — such as when a declaration "state[s] only conclu-

17  sions, and not `such facts as would be admissible in evidence,'" — can a court disregard a self-

18  serving declaration for purposes of summary judgment." *Id.* (quoting FED. R. CIV. P. 56(e)).  *Id.*

19  at 909.

20  **Discussion**

21      ***Qualified Immunity***

22      In evaluating qualified immunity, courts ask two questions: (1) whether, taking the facts

23  in the light most favorable to the nonmoving party, the officer's conduct violated a constitutional

24  right, and (2) whether that right was clearly established at the time of the alleged misconduct. *See*

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 8

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

*Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001) overruled in part by *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

In seeking qualified immunity, the individual defendants invoke Federal Rule of Civil Procedure 56, which authorizes the Court to grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of factual disputes. *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In assessing whether questions of fact preclude summary judgment, the Court must construe the evidence in the light most favorable to the adverse party. *See Orn v. City of Tacoma*, 949 F.3d 1167, 1171, 1174 (9th Cir. 2020); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Whether an officer is entitled to qualified immunity is an issue of law that must be decided by the Court, *see Hunter v. Bryant*, 502 U.S. 224, 228 (1991), but the Court may submit the related factual matters to the jury, *see Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017).

Plaintiff's position is that the Defendants violated his Fourth Amendment and Fourteenth Amendment rights, unconstitutional seizure of Mr. Orozco when they arrested him without probable cause.

Deputy sheriffs Duggan and Reyna violated Mr. Orozco rights when they arrested him without probable cause.   The facts alleged show that the Defendants violated Mr. Orozco's constitutional rights because they did not have probable cause when they arrested, handcuffed and jailed him, and this right was clearly established at the time of the events in issue.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 9

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

### *Section 1983 and Probable Cause and Plaintiff's Fourth Amendment Claims*

Probable cause is a mixed question of law and fact: the jury makes a determination about underlying facts if there are material disputes of fact; if there are no material disputes of fact then the court makes the determination whether probable cause existed. *See Dubner v. City & County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001); *McKenzie v. Lamb*, 738 F.2d 1005, 1007–08 (9th Cir. 1984) ("the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury").

A claim for unconstitutional seizure is cognizable under § 1983 if an arrest was initiated "without probable cause or other justification." *See Dubner v. City & Cty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001).  Probable cause is evaluated with respect to "the totality of circumstances" known to the arresting officer. *Id*. at 966. The Court's inquiry is whether "a prudent person" in the same situation would have concluded that "a fair probability" existed that the person arrested had committed a crime. *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004).  In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime but must independently investigate the basis of the witness' knowledge or interview other witnesses. *See Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991) (declining to adopt the view that "citizen witnesses are presumptively reliable"); *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 924 (9th Cir. 2001) (reversing the dismissal of a Fourth Amendment false arrest claim against police officers based on citizen's arrest where the plaintiff raised an inference that the officers did not independently investigate asserted violation of law.

The law is clear law enforcement cannot rely solely on the claims of citizen witnesses in establishing probable cause as set forth in *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 924 (9th Cir. 2001.); *see also Vuz v. Dcss III*., 2020 WL 4366023 at page 11.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 10

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

Here, the Yakima Superior Court Judge, Judge Federspiel was crystal clear and left no room for doubt when he ruled that Defendants failed to have probable arrest Mr. Orozco. *Valdez, Dec.*, Ex. 1 and Ex. 3.    It was unreasonable for the Defendants to attempt to rely on the Washington State Auditor's Report as the entire report is hearsay, unauthenticated and lacks personal knowledge of this incident.  The question posed is whether Defendants involved had probable cause to believe that Mr. Orozco had the stolen $100.00 on him at the time they seized him by approaching his house and putting him under arrest, handcuffing him, detaining him and jailing him. No one is alleged to have seen the stolen $100.00 on Mr. Orozco on the date of the arrest. Moreover, given the amount of time that passed between the alleged incident and arrest, nearly 1 year, it is more than reasonable Defendants lacked probable cause and probable cause was stale. It was not reasonable to presume that Mr. Orozco had the stolen $100.00 on him a year later.

"[T]ime is a crucial element of probable cause." *United States v. McCall*, 740 F.2d 1331, 1335 (4th Cir. 1984). "Probable cause ceases to exist when it is no longer reasonable to presume that items, once located on the premises [or the person], are still there." *United States v. Brinklow*, 560 F.2d 1003, 1005 (10th Cir. 1977).  Given the amount of time and reasons that Mr. Orozco was not observed with the claimed theft, it is reasonable to conclude that the facts and inferences indicate that Mr. Orozco seizure was not supported by probable cause. *See Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008); *see also McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984) ("the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury").

Similarly, this Court should rule the same as Ninth Circuit Court of Appeals in *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 924 (9th Cir. 2001.), when it held the law is clear that law enforcement cannot rely on the claims of citizen witnesses in establishing probable cause as they did in this case.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 11

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

Here the Defendants relied solely on the statement of Cindy Goodin as set forth in Affidavit/Declaration of Jerry Towell. *Valdez Dec.*, Ex. 2. There was nothing further provided in Defendant Towell's Affidavit/Declaration. *Id.* Additionally, Mr. Orozco has raised the inference that Defendants failed and did not independently investigate the claims by speaking with him or then Wapato Mayor Dora Alvarez-Roa to verify the facts of this incident. Because the Defendants failed to conduct any independent investigation and the Court in Arpin held law enforcement cannot rely on the claims of citizen witnesses in establishing probable cause as they did in this case, this prevents granting Summary Judgment.

There are no facts in this case that Defendants had probable cause to arrest Mr. Orozco. Because the jury must decide whether there was sufficient evidence to arrest the Plaintiff, this prevents granting summary judgment.

### ***Plaintiff Has Presented Evidence Supporting A Municipal Civil Rights/Monell Claim***

A *Monell* claim requires the Plaintiff to prove 1) Plaintiff was deprived of a constitutional right, 2) the municipality has a policy, 3) the policy amounts to deliberate indifference to Plaintiff's constitutional right, and 4) the policy is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. Of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). In other words, to avoid dismissal of the municipality "a plaintiff alleging a *Monell* violation must '(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy custom amounted to deliberate indifference, i.e. show how the deficiency involved was so obvious and the constitutional injury was likely to occur.'" *Young v. City of Visalia*, 687 F. Supp.2d 1155, 1163 (E.D. Cal. 2010)) (emphasis added).

"If the decision to adopt [a] particular course of action is properly made by that govern-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 12

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

1   ment's authorized decisionmakers, it surely represents an act of official government 'policy.'"

2   *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (Whenever a local government violates

3   a person's federally protected rights, the victim can sue the officer and the governmental entity

4   for money damages under section 1983). Thus, a local government can be liable for an official's

5   conduct when "the official (1) had final policy making authority concerning the action alleged to

6   have caused the particular constitutional or statutory violation at issue and (2) was the policy-

7   maker for the local governing body for the purposes of the particular act." *Weiner v. San Diego*

8   *Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (quotation marks and citation omitted); s*ee also Ow-*

9   *en v. City of Independence*, 445 U.S. 622 (1980)(U.S. Supreme court held municipality cannot

10  claim the officer's good faith as a defense to liability under section 1983.)

11      The U.S. Supreme Court held *in Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)

12  that municipal liability may be imposed under certain circumstances the basis of a single deci-

13  sion by a policymaker.   In that case, the Court determined that the Hamilton County Prosecutor

14  Simon Leis was a such a policy maker in that case.  *Id.* at 485.  Leis advised Whalen and to in-

15  struct the deputy sheriffs to "go in and get" the employees" [the witnesses].  *Id* at 473.  The U.S.

16  Supreme Court held and determined that his [Leis] instruction to "go in and get" the witnesses,

17  combined with the execution of that instruction by the Cincinnati police, subjected Hamilton

18  County to section 1983 liability.  *Id*. at 485.

19      The Supreme stated that "No one has ever doubted, for instance, that a municipality may

20  be liable under § 1983 for a single decision by its properly constituted legislative body -- whether

21  or not that body had taken similar action in the past or intended to do so in the future -- because

22  even a single decision by such a body unquestionably constitutes an act of official government

23  policy." *Id. s*ee *also, e.g., Owen v. City of Independence,* 445 U. S. 622 (1980)

24      Here, the Plaintiff has in fact established a constitutional violation of his Fourth and

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 13

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

Fourteenth Amendment.  In this case, Joseph Brusic, Yakima County Prosecutor, was the final policymaker at the Yakima County Prosecutor's Office, and should be held liable for his acts for constitutional violations that occurred to Mr. Orozco.   Defendants conferred and consulted with Prosecuting Attorney Brusic prior to the arrest and after consultation it was decided to order the arrest of Mr. Orozco.  Under the final policymaker theory, Plaintiff does not have to allege a policy or custom.  "A municipality can be liable even for an isolated constitutional violation . . . when the person causing the violation has final policymaking authority." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003).  Here, Plaintiff was arrested, handcuffed and jailed upon the order and direction of Brusic without probable cause.  This is sufficient to state a Monell claim based on the acts of the final policymaker.

Similar to the *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), in which the deputy sheriffs executed an arrest of the Plaintiff upon the County Prosecutor's instructions, here the Plaintiff was also arrested by deputy sheriffs upon instruction from Sgt. Towell conferring and getting permission/instruction from County representatives, including, but not limited to the County Prosecutor to arrest the Plaintiff.   This court should rule the same as the Court in *Pembaur* when it held and determined that the County prosecutor's instruction to "go in and get" the witnesses, combined with the execution of that instruction by the Cincinnati police, subjected Hamilton County to section 1983 liability, here, the Court should hold that the County prosecutor's instruction that there was probable cause and go and arrest Mr. Orozco, combined with the execution and arrest of Mr. Orozco subjects the Yakima County Sheriff's Office/Yakima County to section 1983 liability.

Thus, this Court should deny Defendants' motion for Summary Judgment as to Plaintiff's claim of Monell and Yakima County.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 14

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

### *Negligence*

When considered in the light most favorable to Plaintiffs the evidence establishes a genuine issue of material fact whether the Defendants breached a duty to them, including whether the Defendants' response and actions were reasonable. The testimony from Plaintiff—which must be taken as true—shows that there was no probable cause to arrest Mr. Orozco, and he was arrested at the instruction and advisement of County officials/policymakers.   The same analysis mentioned above for lack of Probable cause would also apply here.

To establish a negligence claim, a plaintiff must establish (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of conduct; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury.  *Reynolds v. Hicks,* 134 Wn.2d 491, 495, 951 P.2d 761 (1998). The City of Seattle is held to the same duty as any other person. *See* RCW 4.96.010, RCW 4.92.090. It has "a general duty of care, that of a 'reasonable person under the circumstances.'" *Keller v. City of Spokane*, 146 Wn.2d 237, 243, 44 P.3d 845.  Washington courts have "long recognized the potential for tort liability based on the negligent performance of law enforcement activities." *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 543, 442 P.3d 608 (2019).

In *Beltran-Serrano*, an officer approached a man standing on the corner of an area where the police had received multiple complaints about panhandlers. The officer had no probable cause or reasonable suspicion to believe he had done anything illegal. Beltran-Serrano was a Spanish-speaker and suffered from mental illness. Despite radioing for a Spanish-speaking officer, the officer continued to try to speak with him in English. He became scared and ran away, and the officer shot him in the back with a stun gun, which did not stop him. She then pulled out her gun and fired multiple shots until Beltran-Serrano fell to the ground. In a lawsuit, Beltran-Serrano "alleged that the officer improperly, unreasonably, and unnecessarily escalated the situa-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 15

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

tion, and that the City failed to properly train and supervise officers to deal with the mentally ill and to exercise appropriate force." *Id*. at 542. The City successfully moved for summary judgment that it owed no duty to plaintiff.

The Supreme Court noted the common law has always imposed upon everyone "a duty of reasonable care to refrain from causing foreseeable harm in interactions with others." *Id*. at 550.

This duty applies to law enforcement and "encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance." *Id*.  Accordingly, the court held that the City and the officer owed Beltran-Serrano a duty in tort to act with reasonable care because his claims arose "out of Officer Volk's direct interaction with him, not the breach of a generalized public duty." *Id*. at 551. The court held that negligence claims against law enforcement "require consideration of the totality of the circumstances involved in the encounter between [the officer] and [the plaintiff]," to "identify potential negligence in the series of actions leading up to the decision to shoot." *Id*. at 545.

Defendant suggests that what occurred when the deputy sheriffs went to Mr. Orozco's house, spoke with him, handcuffed, arrested him, and jailed him with no legal justification does not amount to an interaction that imposes upon the officer a duty to use reasonable care. This argument defies common sense. When taken to its logical conclusion, the Defendants are implying that if a deputy sheriff randomly goes to anyone's house, handcuffs them, arrests them and takes them to jail, anyone arrested and jailed has no claim because the deputies were following the instructions of another.  In reality, the act of arresting and jailing anyone is an affirmative act on the part of the deputy sheriffs that requires them to refrain from causing foreseeable harm to others.  Any other result would be nonsensical.

Plaintiff has presented sufficient evidence to show a genuine issue of material facts as to whether Defendants conduct was negligence.  Thus, this Court should deny Defendants' motion

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 16

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

1    for Summary Judgment as to Plaintiff's claim of Negligence.

2        Plaintiff defers to that analysis as it is a similar analysis required for the Plaintiff's analy-

3    sis of no probable cause.

4        ### *WLAD*

5        The Washington Law Against Discrimination (WLAD) prohibits discrimination and pre-

6    serves "[t]he right to be free from discrimination." RCW 49.60.030(1).  It was enacted for the

7    protection of the public welfare, health, and peace of the people of this state, and in fulfillment of

8    the provisions of the Constitution of this state concerning civil rights. The Legislature found that

9    discrimination threatens not only the rights and proper privileges of this state's inhabitants but

10   menaces the institutions and foundation of a free democratic state. RCW 49.60.010.

11       WLAD guarantees "[t]he right to be free from discrimination because of" various pro-

12   tected classifications – including race. RCW 49.60.030(1). "This right shall include, but not be

13   limited to:… "[t]he right to the full enjoyment of any of the accommodations, advantages, facili-

14   ties, or privileges of any place of public resort, accommodation, assemblage, or amusement."

15   RCW 49.60.030(1)(b); accord RCW 49.60.215. Public streets and sidewalks are places of public

16   accommodation and assemblage. RCW 49.60.040(2).

17       Under RCW 49.60.030(l)(b), WLAD secures the right to "full enjoyment" of any place of

18   public accommodation… "without acts directly or indirectly causing persons of [a protected

19   class] to be treated as not welcome, accepted, desired, or solicited." See RCW 49.60.040(14).

20   Similarly, WLAD prohibits "any person or the person's agent or employee [from committing] an

21   act which directly or indirectly results in any distinction, restriction, or discrimination" based on

22   a person's membership in a protected class.

23       In *McKinney v. City of Tukwila*, 103 Wash. App. 391 (2000), white police officers and

24   city [defendants] were not liable on claim asserted under state Law Against Discrimination by

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 17

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

African Americans whose vehicle was detained in park following a report that vehicle's occupants might be connected to armed burglary that had just occurred; there was no evidence that the officer who requested that the car to be stopped knew its occupants were African-American, and mere fact that white people in park were not detained did not show detention was motivated by race. (Emphasis added)

In this case, there is evidence that Defendants knew that Mr. Orozco was Latino/Hispanic descent.  They were aware of his status as past mayor.  Defendants they him when they went to his house to arrest, handcuff, detain, and jail him.  No Defendant has disputed that they did not see Mr. Orozco prior to the arresting him, handcuffing him, detaining him and jailing him.  Mr. Orozco is Latino/Hispanic and he was treated differently because of his race.   Defendants discriminated against Plaintiff because of his race because they arrested him with no legal justification and on the basis of an alleged theft of $100.00 that took place nearly 1 year before the incident.  Defendants also stated in their deposition that in their entire career they never arrested anyone for an alleged theft of $100.00 and based on these set of circumstances.  Mr. Towell stated this was the only case he has ever submitted with that particular offense being attached to it.  Thus, the Court should allow Plaintiff's WLAD claim to proceed.

### ***Tort of Outrage***

Outrageous conduct is conduct "which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim `Outrageous!'" *Browning v. Slenderella Sys*., 54 Wash. 2d 440, 448, 341 P.2d 859 (1959) (quoting Restatement of Torts § 46(g) (Supp.1948)). *See also Dunn v. Moto Photo,* Inc., 828 S.W.2d 747, 753 (Tenn. App.1991).  The Washington Supreme Court held in *Browning v. Slenderella*, that the Plaintiff meet the elements of tort of outrage where the plaintiff was not served at a salon because she was African American.  *See Browning v. Slenderella Sys. of Seattle*, 54 Wash.2d 440,

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 18

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

1  448-49 (1959), *disapproved of on other grounds by Nord v. Shoreline Sav. Ass'n*, 116 Wash.2d

2  477 (1991).   In that case, the Washington Supreme Court had "no difficulty in finding that the

3  conduct of the defendant was 'outrageous,'" meaning conduct "beyond all reasonable bounds of

4  decency." *Id.*

5      To prevail on a claim for outrage, a plaintiff must prove three elements: (1) extreme and

6  outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe

7  emotional distress on the part of the plaintiff.*" Robel v. Roundup Corp*., 148 Wash.2d 35, 51

8  (2002) (quotation marks omitted). "[T]he three elements are fact questions for the jury[.]" Id.

9      This Court must first determine under the first element whether "reasonable minds could

10 differ on whether the conduct was … so outrageous in character, and so extreme in degree, as to

11 go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in

12 a civilized community." *Robel*, 148 Wash.2d at 51 (quotation marks and emphasis omitted). In

13 *Robel*, the Washington Supreme Court upheld a trial court's finding of outrageous conduct, hold-

14 ing an employer liable where fellow employees repeatedly mocked the plaintiff and called her

15 "vulgar" names. *Id*. at 51-52.

16     Here, the Defendants' behavior was outrageous because they stripped Mr. Orozco of his

17 constitutional rights and his right to be free to move when they handcuffed him, arrested him and

18 jailed him and he spent the night in jail.  Defendants conclusionary argument is "the facts alleged

19 by plaintiff do not meet this high standard. *Defendants Motion for Summary Judgment*, page 20

20 lines 16.   Mr. Orozco was never told why he was arrested.

21     Here, the Plaintiff has presented evidence for a reasonable juror to find conduct beyond

22 rough language or unkindness.  The forced handcuffing, arresting, and being jailed without justi-

23 fication or explanation, which did not end until the Superior Court judge released and found that

24 there was no probable cause to arrest Mr. Orozco.  And here, unlike the defendant's conduct in

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 19

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

*Slenderella*, where plaintiff was free to come and go but was not served, Plaintiff present evidence that Defendants handcuffed him, arrested him and jailed him that prevented him from leaving.

Plaintiff has stated the incident has affected him emotionally and caused him mental stress and anguish. Plaintiff was publicly humiliated and embarrassed as the incident was broadcast via television and newspaper.

Washington courts require a lesser showing of emotional distress in outrage claims compared to negligent infliction of emotional distress claims, reflecting a "definite tendency to impose greater responsibility upon a defendant whose conduct was intended to do harm[.]" *Kloepfel*, 149 Wash.2d at 200.

In contrast to claims for negligent infliction of emotional distress, there is no requirement to show physical manifestations of emotional distress in outrage claims. *See id*. at 198 ("We have never applied the objective symptomatology requirement to intentional infliction of emotional distress."). Direct proof is not always required, because once "extreme and outrageous conduct intended to cause emotional distress [has] been shown, it can be fairly presumed that severe emotional distress was suffered." *Id*. at 201-02; *see also Carmody v. Trianon Co*., 7 Wash.2d 226, 235 (1941) (Upholding jury award despite lack of direct evidence of mental suffering because "[n]o one could receive a beating, such as was rendered the plaintiff in this case, without suffering insult and humiliation therefrom."). To determine the minimum threshold showing required for severe emotional distress, it is helpful to look to cases where the threshold was not met. One case where outrageous conduct was found but the emotional distress shown was insufficient to support an award of damages was *Slenderella*. The record failed to support compensatory damages because there was "no finding that the plaintiff suffered any embarrassment, humiliation, mental anguish, or emotional shock." *Slenderella*, 54 Wash. 2d at 450. The court based this hold-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 20

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

ing in part on the fact that "[t]here was no public humiliation; none of the other women in the reception room was aware that there was an act of discrimination." Id. at 449. And when a salon representative called the next day to apologize and offer an appointment, "the plaintiff thanked her for calling, but referred her to the plaintiff's attorney. This is more indicative of a desire for punitive action than of severe emotional distress." *Id*.

Here, the Plaintiff's experience unfolded largely in public, it was broadcast via television, newspaper and digitally. Mr. Orozco testified he was embarrassed, suffered anxiety and this incident received a "horrible amount of press that covered that." See Valdez Dec., Ex. 6 page 84, lines 19-25.

Plaintiff has presented sufficient evidence to show a genuine issue of material facts as to whether Defendants conduct was outrageous and whether Plaintiff suffered emotional distress as a result. Thus, this Court should deny Defendants' motion for Summary Judgment as to Plaintiff's claim of outrage.

## **<u>CONCLUSION</u>**

For the reason stated above, Plaintiffs request that Defendants Motion for summary judgment should be denied.

Dated: February 14, 2023

VALDEZ LEHMAN, PLLC

By: */s/Jesse Valdez*
Jesus ("Jesse") Valdez, #35378
Attorney for Plaintiff
14205 SE 36th St. Ste. 100
Bellevue, WA 98006
jesse@valdezlehman.com

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 21

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on February 14, 2024, I electronically filed this document with the

3  Clerk of the Court using the CM/ECF system, which sent notification of this filing to the follow-

4  ing:

5

6                          John E. Justice
                          Law, Lyman, Daniel
                          Kamerrer & Bogdanovich, P.S.
7                          P.O. Box 11880
                          Olympia, WA. 98508
8                          Phone: (360)754-3480
                          jjustice@lldkb.com
9
                          *Sent via Email*
10

11                              */s/Jesse Valdez*_____
                               Jesus ("Jesse") Valdez, WSBA #35378
12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 22

USDC WAED No. 1:22-CV-03058-SAB

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste. 100
Bellevue, Washington 98006