FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 28, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN E. OROZCO,<br><br>    Plaintiff,<br><br>    v.<br><br>YAKIMA SHERIFF'S OFFICE, YAKIMA COUNTY, and SERGIO REYNA and JANE DOE REYNA, JOHN DUGGAN and JANE DOE DUGGAN, and J. TOWELL and JANE DOE TOWELL,<br><br>    Defendants. | NO.  1:22-CV-03058-SAB<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE; AND CLOSING FILE**<br><br>**ECF No. 20** |

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 20. Plaintiff is represented by Jesse Valdez and opposes the motion. ECF No. 23. Defendants are represented by John Justice. The Court has reviewed the briefings and concluded that oral argument is not warranted. See L.Civ.R. 7(3)(B)(iii). For the reasons that follow, Defendants' motion is granted as to Plaintiff's federal claims.

ORDER - 1

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant

is to be believed, and all justifiable inferences are to be drawn in his favor."

*Anderson*, 477 U.S. at 255.

## Background

The claims in this action arise from Plaintiff John Orozco's warrantless arrest at his home, handcuffing and detention for the alleged theft of public funds while he served as the City Administrator for the City of Wapato, Washington ("the City"). The following facts are drawn from the parties' statements of fact and other summary judgment submissions in connection with the motion, and are undisputed unless otherwise noted.

### 1. Events prior to arrest

#### a. State Audit and Settlement with Plaintiff

Though elected Mayor of the City for a two-year term, Plaintiff resigned in September 2018 and was immediately appointed to a newly-created position as City Administrator, which paid $83,000 more per year. ECF No. 21 at 9. In 2019, the Washington State Auditor's office conducted an "accountability audit" of the City's business from January 1, 2018 through December 31, 2018. The auditor's findings, as well as the City's responses, were summarized in a 63-page report dated May 2, 2019. ECF No. 21 at 47-109. The report stated that the audit had revealed "an alarming disregard for the accountability and transparency that is the foundation for public trust in government." ECF No. 21 at 48. One of the auditor's findings was that Plaintiff had violated the Code of Ethics for Municipal Officers

by personally benefiting from the creation of the City Administrator position and contract. ECF No. 21 at 53. The auditor also found that the City did not have adequate controls over cash receipting and billing to safeguard public funds. ECF No. 21 at 75.

On June 7, 2019, the State of Washington filed suit in Yakima County Superior Court against Plaintiff, the City, its city council and mayor. The case alleged that Plaintiff had violated the Code of Ethics for Municipal Officers in facilitating his own employment contract as City Administrator and that all of the defendants had violated Washington's open public meeting laws. ECF No. 21 at 113-22. As part of the settlement of the lawsuit without admission of any liability, Plaintiff agreed to resign from the City effective July 19, 2019, waive any severance pay, pay a fine and never work for the City of Wapato again. ECF No. 22 at 3; ECF No. 21 at 38-46.

### b. Criminal investigation of Plaintiff

The content of the City's audit was brought to the attention of the Yakima County Sheriff's Office (YCSO) in meetings. ECF No. 21 at 27.

Earlier in 2019, YCSO Sergeant Jerrold Towell received a complaint provided by a terminated City employee, Cindy Goodin. ECF No. 21 at 23. In her written statement dated March 14, 2019, Goodin stated that on October 4, 2018, a patron, Ron Frank, came to City Hall and made a $100.00 cash donation to the Harvest Festival in the presence of Ms. Goodin and Plaintiff. ECF No. 21 at 35-36.

She claimed that she put the money in the till and began to generate a receipt, but Plaintiff instructed her to give him the cash and draft up the receipt in Word, rather than utilize the City's usual accounting system. *Id*. Ms. Goodin indicated that she followed Plaintiff's directions and provided the atypical receipt to Mr. Frank. *Id*. Ms. Goodin stated that Plaintiff advised her that he would reimburse City's clerk-treasurer, Robin Cordova, for personal expenditures tied to the festival. *Id.* As this did not "sit well" with Ms. Goodin, she documented the date and name of Mr. Frank. Later in 2018, Ms. Goodin asked Ms. Cordova if she had received $100.00 from Plaintiff and Ms. Cordova informed her she had not. *Id*. She then prepared her written complaint.

During the investigation, Sgt. Towell communicated with the state auditor's office, which verified that there was no receipt for $100.00 in cash deposited on October 4, 2019. ECF No. 21 at 26-27. Sgt. Towell also obtained a copy of the receipt from Mr. Frank, who provided a written statement on July 25, 2019 that it was the receipt he had received from Ms. Goodin for the donation. ECF No. 21 at 37. Sgt. Towell also conducted interviews of Ms. Goodin and Ms. Cordova. ECF No. 24-3 at 4; ECF No. 21 at 33.

Sgt. Towell testified in his deposition that prior to Plaintiff's arrest his office received information that "Mr. Orozco was loading a U-Haul from the back side of the house that he was living in. . . And that the neighbors felt it was suspicious because it was concealed behind the house." ECF No. 21 at 24.

ORDER - 5

### 2.  Plaintiff's Arrest on August 12, 2019

On August 12, 2019, Sgt. Towell sent deputies John Duggan and Sergio Reyna to Plaintiff's residence. While there, Deputy Duggan recontacted Sgt. Towell to confirm the presence of a U-Haul at the property. ECF No. 24-6 at 5 (Duggan testified he saw a "large size U-Haul in the driveway."). The presence of the U-Haul increased Sgt. Towell's concerns that Plaintiff was preparing to move or leave.[1] ECF No. 24-3. Sgt Towell then discussed the matter with his supervisor Carl Hendrickson (the YCSO Chief Criminal Deputy), Joseph Brusic (a Yakima County prosecuting attorney), and the Yakima County Sheriff Robert Udell, and according to Towell, all agreed that there was probable cause to arrest. ECF No. 21 at 23-25. Sgt. Towell then advised Duggan and Reyna to arrest Plaintiff. On August 12, 2019, Plaintiff was arrested at his residence. He was handcuffed and taken into custody.

Sgt. Towell filed with the Yakima County Superior Court a request for determination of probable cause and declaration advising that Plaintiff had been arrested for Misappropriation and Falsification of Accounts by a Public Officer in violation of RCW 42.20.070 and Official Misconduct in violation of RCW

---

[1] Plaintiff's response indicates that he was in fact in the "midst of moving." ECF No. 23 at 2.

ORDER - 6

9A.80.010.[2] ECF No. 24-3.

On August 14, 2019, Defendant appeared before Yakima Superior Court Judge Doug Federspiel for a determination of probable cause. ECF No. 24-4. The state court reviewed Sgt. Towell's declaration, ECF No. 24-3, and determined he could not find probable cause due to deficiencies in the declaration, and released Plaintiff. ECF No. 24-2. During the hearing, Judge Federspiel remarked that he could not base a finding of probable cause on unknown content of the state auditor's report, "conclusory statements," or statements not attributable to a source. ECF No. 24-4 at 5.

### 3. Procedural History

On May 10, 2022, Plaintiff filed a Complaint against Yakima County, the YCSO, and YCSO's deputies Reyna, Duggan, and Towell, alleging claims under 42 U.S.C. § 1983. ECF No. 1. Plaintiff claims defendants violated his Fourth and Fourteenth Amendment rights, specifically his right to be free from unreasonable

---

[2] Defendants' Statement of Fact No. 31 contains a misstatement of the record and citation to Washington law. ECF No. 22 at 5("He was arrested for Misappropriation and Falsification of Accounts by a Public Officer, in violation of RCW 9A.80.010."). Misappropriation by a public officer falls under RCW 42.20.070. Sgt. Towell's "Suspect Information Request" filed in state court requested charges under both RCW 9A.80.010 and RCW 42.20.070. ECF No. 24-3 at 2; ECF No. 24-4.

seizure in the form of arrest without probable cause. ECF No. 1 at 1; ECF No. 23 at 9. Plaintiff asserts the County should be held liable under § 1983 for the Yakima County prosecutor's role in the decision to arrest. ECF No. 23 at 13-14. The Complaint also asserts state law claims for violation of the Washington Law Against Discrimination, RCW 49.60.030, based on race, as well as negligent infliction of emotional distress, outrage, and negligence. ECF No. 1 at 4-5.

Defendants' Motion for Summary Judgment seeks dismissal of all claims.

## Discussion

### 1. Fourteenth Amendment Claims

As a preliminary matter, the Court notes that it is difficult to discern Plaintiff's claims in this lawsuit as the only mention of Constitutional rights is in the first line of the Complaint referencing the Fourth and Fourteenth Amendment. ECF No. 1 at 1. In response to Defendant's motion, Plaintiff fails to offer any legal or factual arguments as to the pursuit of a claim under the Fourteenth Amendment. Plaintiff has never asserted that his Fourteenth Amendment claims are distinct from his Fourth Amendment claims. *See* ECF No. 1; ECF No. 23 at 9, 13-14. Because any claim of arrest without probable cause must be analyzed under the Fourth Amendment, Defendants' Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment claims are granted. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994); *accord Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection

ORDER - 8

against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

**2. Claims against the Yakima County Sheriff's Office**

Plaintiff has named the YCSO as a defendant, though it is not listed in the body of the Complaint where the parties are described. ECF No. 1 at 2. Whether a government entity has the capacity to be sued is determined by state law. Fed.R.Civ.P. 17(b)(3). Plaintiff has not pointed to any Washington statute indicating that the Washington legislature intended county sheriff's offices to be a separate legal entity from the county itself. Under Washington law, sovereign immunity is waived for all "local governmental entities." RCW 4.96.010. This term is narrowly defined to include "a county, city, town, special district, municipal corporation ... quasi-municipal corporation, or public hospital." RCW 4.96.010(2). As the YCSO is merely the vehicle through which the County fulfills its police functions, the real party in interest is the County (which is already a named party). *See Dunkle v. Kitsap Cnty. Sherriffs Office Jail*, C14-5642 RBL-KLS, 2014 WL 5334275, at *1 (W.D. Wash. Oct. 20, 2014) ("In order to bring an appropriate action challenging the actions, policies or customs of a local governmental unit, a plaintiff must name the county or city itself as a party to the action, and not the particular municipal department or facility where the alleged violation occurred."). As a result, Plaintiff cannot maintain § 1983 claims against

the YCSO, and summary judgment is granted as to the same.

### 3.  Section 1983 Claims against Individual Defendants

Plaintiff alleges Defendants Towell, Duggan and Reyna are liable under 42 U.S.C. § 1983 because they arrested him without probable cause in violation of the Fourth Amendment. Defendants argue each officer is entitled to qualified immunity.

To establish a claim under §1983, a plaintiff must establish (1) a deprivation of a federal or constitutional right by (2) a person acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Section 1983 allows a plaintiff to seek money damages from government officials who have violated his or her constitutional rights. *Id*. The Fourth Amendment guarantees citizens the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. CONST. amend. IV. This includes the right to be free from unreasonable arrests. *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). It is well established that "an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir.1988).

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). The Court engages in a two-part analysis to determine whether officials are entitled to qualified immunity. The Court must determine: (1) whether the defendant violated a constitutionally protected right, and (2) whether that particular right was clearly established at the time of the violation. *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017). "These two prongs ... need not be considered in any particular order, and both prongs must be satisfied for a plaintiff to overcome a qualified immunity defense." *Id*. Where party claims an unlawful arrest, the qualified immunity analysis focuses on "(1) whether there was probable cause for the arrest; and (2) whether it is reasonably arguable that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cnty*., 663 F.3d 1071, 1076 (9th Cir. 2011). Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Defendants are entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest Plaintiff. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.

2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). This is an objective inquiry. *Id*. In making this determination, courts examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citation omitted). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Id.* Indeed, "probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

In Washington, it is a felony for a public officer to receive money on account of a city and appropriate it to his own use or knowingly keep any false account. Wash. Rev. Code § 42.20.070. In addition, a public servant can be found guilty of official misconduct, a gross misdemeanor, if he "intentionally commits an unauthorized act under color of law" or "refrains from performing a duty imposed upon him . . . by law." Wash. Rev. Code § 9A.80.010.

The Court rejects each of Plaintiff's arguments that probable cause did not exist for his arrest. First, Plaintiff claims that the state court judge's ruling made "crystal clear" that Defendants "failed to have probable [cause to] arrest" Plaintiff. ECF No. 23 at 11. But the state court record does not support this argument.

Rather, based on the record in the hearing, which was only the five paragraph declaration written by Sgt. Towell, the state court merely held that that Sgt. Towell's declaration lacked necessary information to find that probable cause exists and bind the matter over. The state court was not asked, and did not reach, the question of whether Defendants had probable cause for arrest under the Fourth Amendment. *See King v. Ambs*, 519 F.3d 607 (6th Cir. 2008) (concluding probable cause existed for purposes of the Fourth Amendment and upholding qualified immunity for arresting officer, despite state court finding that he had no probable cause for the warrantless arrest). Plaintiff's summary judgment response does not acknowledge that even if the state court lacked adequate information to find probable cause, it still could have been objectively reasonable for the officers to believe they had probable cause to arrest. *See Fodelmesi v. Schepperly*, No. 87 Civ. 6762 (KMW), 1992 WL 84469, *3 (S.D.N.Y. Apr. 15, 1992) (even though state court found that officers lacked probable cause to arrest plaintiff, "it may still have been objectively reasonable for them to believe that they had probable cause to arrest plaintiff.") (citing *Malley v. Briggs*, 475 U.S. 335 (1986)).

Second, Plaintiff claims delay of nearly one year between the date of the alleged theft and the arrest undermines the existence of probable cause and that "probable cause was stale." ECF No. 23 at 11. Plaintiff's contention of staleness has little merit. There is no requirement that police officers must arrest an offender as soon as probable cause for the arrest exists. "While a long delay in seeking a

*search* warrant can create difficulties if the information is stale, probable cause to *arrest*, once formed, will continue to exist for the indefinite future, at least if no intervening exculpatory facts come to light." *United States v. Bizier*, 111 F.3d 214, 219 (1st Cir. 1997) (emphasis in original) (internal quotation marks omitted). Here, the record does not show that exculpatory facts came to light prior to arrest. The information that emerged after Ms. Goodin's complaint, including the state audit, strengthened the basis for arrest. Accordingly, the passage of time did not negate the existence of probable cause, nor was probable cause "stale" at the time of arrest. *See Forman v. Richmond Police Dept.*, 104 F.3d 950, 962 (7th Cir. 1997) (delay of more than a year before an arrest did not undermine probable cause).

Third, Plaintiff claims Defendants should have known they did not have probable cause to arrest because there was no reason to presume that Plaintiff "had the stolen $100.00 on him a year later." ECF No. 23 at 11. However, continuous possession of misappropriated funds is not an element of either crime forming the basis for Plaintiff's arrest.

Finally, Plaintiff contends Defendants failed to conduct "any independent investigation by speaking with [Plaintiff] or then Wapato Mayor Dora Alvarez-Roa to verify the facts of this incident." ECF No. 23 at 12. However, Plaintiff has not presented any evidence that would have been discovered had the additional investigation been done. Accordingly, the Court has no basis to find that Plaintiff's arrest was based on a clearly deficient investigation. Furthermore, the record belies

Plaintiff's claim that Defendants improperly relied solely on the claim of a citizen witness (Cindy Goodin) contrary to *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). ECF No. 23 at 11-12.

In any event, the Court need not determine as a matter of law whether or not the facts make out a violation of the Fourth Amendment, as the Court finds that a reasonable officer could have believed there was probable cause for arrest – that is, it is reasonably arguable that there was probable cause for arrest, and therefore Defendants are entitled to qualified immunity. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (discouraging resolution of questions of constitutional interpretation where the case can be resolved based on qualified immunity).

At the time of Plaintiff's arrest, Sgt. Towell understood the following. An eye witness, Ms. Goodin, claimed to have seen Plaintiff, while at City Hall employed by the City, take a cash donation to the City from Mr. Frank on October 4, 2018 for its Harvest Festival and direct Ms. Goodin to draft a receipt that did not utilize the City's usual accounting process. Sgt. Towell obtained a copy of the atypical receipt from Mr. Frank and verified Mr. Frank had made a cash donation on October 4, 2018. Sgt. Towell verified with the state auditor's office that the cash deposit was not reflected in the City's accounting systems or bank accounts. Sgt. Towell interviewed another witness, Robin Cordova, who informed him that she did not receive nor request personal reimbursement for festival expenses from Plaintiff. Sgt. Towell was aware the state auditor's office had made findings that

while employed for the City in 2018, Plaintiff had engaged in arrangements for his own personal gain. Finally, when a U-Haul appearing in Plaintiff's driveway suggested that he may be moving, Sgt. Towell consulted with both his supervisors and the prosecuting attorney as to the existence of probable cause prior to directing Plaintiff's arrest.

Under the totality of the circumstances, reasonable officers, could have disagreed whether there was probable cause to arrest Plaintiff for misappropriation/falsification of accounts or official misconduct. Plaintiff has not cited any case which could have provided notice officers were violating a clearly established constitutional right under the facts before them. In addition, though consultation with a prosecutor does not guarantee that qualified immunity will follow, Sgt. Towell took the precaution of reviewing the known facts with his superiors and the local prosecutor. This consultation buttresses the conclusion that Sgt. Towell's actions were objectively reasonable, or at least arguably so. Qualified immunity therefore attaches.

As to Defendants Duggan and Reyna, it is undisputed that Duggan and Reyna effectuated Plaintiff's arrest only after Sgt. Towell made the decision to arrest, and Duggan and Reyna acted pursuant to Sgt. Towell's direction. An officer may rely on another officer's determination of probable cause to make an arrest even if the arresting officer does not have firsthand knowledge of the facts supporting probable cause. *See United States v. Hensley*, 469 U.S. 221, 231 (1985)

(" '[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and . . . officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.' ") (quoting *United States v. Robinson*, 536 F.2d 1298, 1299 (9th Cir. 1976)); *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) ("The accepted practice of modern law enforcement is that an officer often makes arrests at the direction of another law enforcement officer even though the arresting officer himself lacks actual, personal knowledge of the facts supporting probable cause."). However, an arresting officer is only permitted to rely on such representations and remain entitled to the protections of qualified immunity if it was objectively reasonable for him or her to do so under the circumstances. Here, viewing all the evidence in the light most favorable to Plaintiff, Plaintiff has made no showing that suggests that Duggan's or Reyna's reliance on Sgt. Towell was unreasonable under the circumstances. Examination of the circumstances relevant to officers Duggan and Reyna establish, as a matter of law, that they were objectively reasonable in following orders to arrest Plaintiff and hence they are entitled to qualified immunity.

### 4. Section 1983 Claims against the County

The Court turns next to Defendants' contention there is no basis for imposition of municipal liability in this case. It is well-established that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in

other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); s*ee also Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). To state a *Monell* claim against a municipality, plaintiff must allege facts demonstrating "that an 'official policy, custom, or pattern' on the part of [the municipality] was 'the actionable cause of the claimed injury.' " *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)); s*ee also Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (explaining that to establish municipal liability under § 1983, a plaintiff must show a direct causal link between the municipal policy or custom and the alleged constitutional violation).

The Ninth Circuit has recognized four theories for establishing municipal liability under *Monell*: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Here, plaintiff asserts claims predicated on the final policymaker theory. *See* ECF No. 23 at 14.

A municipality can be liable for an isolated constitutional violation when the person causing the violation has "final policymaking authority." *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality) ("[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the

government to § 1983 liability."). Whether an official has final policymaking

authority is a question for the court to decide based on state law. *See Jett v. Dallas*

*Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("[W]hether a particular official has

'final policymaking authority' is a question of state law. As with other questions of

state law relevant to the application of federal law, the identification of those

officials whose decisions represent the official policy of the local government unit

is itself a legal question to be resolved by the trial judge before the case is

submitted to the jury.") (emphasis in original) (citations and internal quotation

marks omitted).

Defendant County has satisfied its burden on summary judgment by pointing

to the fact there is no evidence that the actions of which Plaintiff complains were

taken pursuant to an official municipal policy or custom. In opposition, Plaintiff

argues that Joseph Brusic, then a Yakima County deputy prosecutor, "was the final

policymaker at the Yakima County Prosecutor's Office" and "should be held

liable" for his role in the decision to arrest Plaintiff. ECF No. 23 at 14. Plaintiff

cites *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). However, the

Supreme Court's decision in *Pembaur* was based on the fact that "the Court of

Appeals concluded, based upon its examination of Ohio law, that both the County

Sheriff and the County Prosecutor could establish county policy under appropriate

circumstances, a conclusion that we do not question here." *Pembaur*, 475 U.S. at

484. *Pembaur* thus provides no guidance whatsoever as to whether, under

ORDER - 19

Washington law, Bursic constituted a final policymaking official with respect to Plaintiff's claim. Contrary to Plaintiff's argument, there is no analogous evidence suggesting that Bursic gave any instruction to "go in and get" Plaintiff. ECF No. 23 at 14. Sgt. Towell testified that he consulted with Bursic and Bursic agreed that probable cause existed. Plaintiff has not pointed to any evidence or legal authority supporting the conclusion that Bursic had final policymaking authority regarding when probable cause for an arrest has been established. *See e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1234 (9th Cir. 1999) (holding that deputy prosecutor in Hawaii did not have final policymaking authority because her decision to prosecute a case was constrained by policies made by the elected county prosecutor and subject to review by the same); *Anderson v. City of Bellevue*, 862 F.Supp.2d 1095, 1108 (W.D. Wash. 2012) (declining to hold city liable for charging decisions of chief criminal deputy prosecutor). Plaintiff's vague assertion of final policymaking authority by a deputy prosecutor is insufficient for the *Monell* claim against the County to survive.

### 5. State Law Claims

This Court may decline supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to

exercise jurisdiction over the remaining state-law claims." *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (J. O'Scannlain, dissenting) ("Our judicial branch should be particularly sensitive to the impacts of its decisions on state legal systems. While federal courts may be obliged to speak on questions of state law in certain circumstances, we should always be mindful that, absent a strong justification, state law claims belong in state courts...State courts are the proper fora for those claims, and the federal courts should stay out of the fray unless there is a reason for them to jump in—that is, unless 'values of judicial economy, convenience, fairness, and comity' would be served thereby.") (quotation omitted).

Here, because the only remaining claims are state law claims, the Court declines to exercise supplemental jurisdiction over these claims. As such, the Court will dismiss the state law claims without prejudice.

Accordingly**, IT IS HEREBY ORDERED:**

1.  Defendants' Motion for Summary Judgment, **ECF No. 20**, is **GRANTED in part** and **DENIED in part**. The federal claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the state law claims. The remaining state law claims are dismissed without prejudice.

///

///

///

ORDER - 21

2. The District Court Executive is directed to enter judgment in favor of the Defendants and against Plaintiffs on the federal claims under 42 U.S.C. § 1983.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 28th day of March 2024.



Stanley A. Bastian
Chief United States District Judge

ORDER - 22